IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VIEWPOINT PROFESSIONALS LLC,**<br><br>a company organized in Wyoming doing business in New York,<br><br>        Plaintiff,<br><br> -against-<br><br><br>**NATIONAL INVESTMENT COMPANY,**<br><br>a company organized in the State of Libya and doing business in Tripoli, Libya,<br><br>        Defendant. | **COMPLAINT FOR A CIVIL CASE ALLEGING BREACH OF CONTRACT AND CONVERSION**<br>(28 U.S.C. § 1330; FSIA)<br><br><br>Case No.<br><br><br><br>**JURY TRIAL REQUESTED.** |

## COMPLAINT

### I. THE PARTIES TO THIS COMPLAINT

#### A. The Plaintiff

1. Viewpoint Professionals LLC ("Viewpoint") is a limited liability company organized in the State of Wyoming, doing business in the State of New York, with its principal place of business in Texas at 11947 Laurel Meadow Drive, Tomball, Texas 77377.

### B. The Defendant

2. The National Investment Company ("NIC") is a company owned and controlled by the Libyan National Council government of Libya. It has its headquarters and principal place of business in Tripoli, Libya, at the address: National Investment Company, Al Noufleen Neighborhood, Souk Street, Tripoli, Libya.

## II. BASIS FOR JURISDICTION

3. Jurisdiction is conferred under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 et seq.

4. The Plaintiff, Viewpoint, is incorporated under the laws of the State of Wyoming, and has its principal place of business in the State of Texas.

5. The Defendant, NIC, is incorporated under the laws of Libya, and has its principal place of business in Libya.

6. The Defendant National Investment Company is an agency or instrumentality of the foreign State of Libya. It has no substantive or personal immunity in this action. This controversy arises from the breach of a contract that is entirely commercial in nature, an agreement to purchase and sell general building contracting services to build facilities for a tourist destination and vacation resort, with direct effect in the United States. As such the controversy falls under the exceptions to sovereign immunity set forth in the Foreign Sovereign Immunities Acts, at 28 U.S.C. § 1605(a).

7. Service of process on National Investment Company, as an agency and instrumentality

of Libya, is governed by the requirements of 28 U.S.C. §1608.

### III. AMOUNT IN CONTROVERSY

8. The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is approximately $20,000,000, not counting interest and costs, because this controversy arises from the breach of contractual obligations and other legal breaches, which resulted in damages in that sum. Moreover, the converted property described in this controversy is separately valued at more than $100,000.

### IV. STATEMENT OF CLAIMS

9. Plaintiff Viewpoint and Defendant NIC made an agreement on or about May 4, 2009 (the "May 2009 Contract"). Under the agreement, Viewpoint agreed to act as the general contractor in a construction project to erect vacation-resort-style accommodations and related amenities on the waterfront of Tripoli, Libya, at a site in Hay Al-Andalous (the "Tripoli Beach Project"). Viewpoint performed its part of the agreement in good faith.

10. Further performance of any agreements between Viewpoint and NIC is impossible now, due to dangerously unsettled and violent conditions within Libya, especially in the Tripoli waterfront area. Nevertheless, NIC has failed to pay 10% of monies still owed under the written agreement for work performed up to May 2010—a sum of at least $1,447,100, not counting interest. Ostensibly NIC withheld this sum to guarantee Viewpoint's completion of performance, but Viewpoint has fully performed its part of the agreement, and it is now entitled to full payment, including any withheld sums.

11. While Viewpoint was performing the works stipulated in the May 2009 Contract,

NIC asked Viewpoint to undertake other works on the site, with Viewpoint continuing to act as general contractor for the Tripoli Beach Project. Viewpoint agreed to perform these works in exchange for NIC's promise to pay for such work, and to reimburse for Viewpoint for its reasonable costs incurred, including for its hiring of subcontractors, according to the guidelines set forth in the May 2009 Contract. NIC also promised to furnish a second written contract to formally cover the additional work, but it never did.

12. In expectation of such payments and reimbursements, Viewpoint undertook the additional works that NIC required for the Tripoli Beach Project. Viewpoint performed its part of the agreement in good faith, and NIC accepted the work without objection, protest, or complaint, resulting in Viewpoint's substantial detriment, and NIC's substantial benefit. Viewpoint incurred several millions of dollars of expense and debt for materials and subcontractor work. Thus, Viewpoint was paid neither for having performed the agreement, nor for the expenses and costs it incurred to NIC's benefit.

13. Between autumn 2010 and the present, Viewpoint sent NIC notices that accounted for, invoiced, and demanded payment for, the work Viewpoint performed and the costs Viewpoint incurred on the Tripoli Beach Project. NIC accepted as accurate and correct Viewpoint's accountings of work performed, of supplies and materials rendered, and of other costs incurred. Through its agents NIC acknowledged the accountings as correct, and NIC promised to pay Viewpoint the sums that NIC owed.

14. No such payment, however, was ever made by NIC, or on NIC's behalf, to Viewpoint. Contrary to their agreement, NIC has not paid Viewpoint for at least $8,893,540 in civil contracting works that it rendered to NIC, for which Viewpoint had invoiced NIC. Nor,

contrary to their agreement, has NIC paid Viewpoint for Viewpoint's substantial costs and liabilities to subcontractors and vendors—at least $8,339,742—which Viewpoint incurred in retaining the subcontractors' services and acquiring equipment and materials for the Tripoli Beach Project. Such payments are still due to Viewpoint, but NIC has failed to pay them, despite the written demands for payment which received no response.

15. Moreover, in the Spring of 2011 civil unrest arose in Tripoli, compelling Viewpoint and its subcontractors to leave the worksite for their own safety. The terms of the agreement between NIC and Viewpoint called for NIC to pay Viewpoint's lost opportunity costs in such an event, but NIC and its agents have not made such payment, which is estimated to be worth approximately $1,796,708. Nor, as stated above, did NIC pay Viewpoint the withheld 10% of monies due to Viewpoint for work that it had already completed under the May 2009 Contract.

16. Furthermore, Defendant NIC, acting through agents in Tripoli, took advantage of the 2011 crisis for its own enrichment, to Viewpoint's detriment, not merely by failing to pay Viewpoint monies owed for its general contracting work and purchase of equipment, materials, and subcontractor services, but also by taking and converting to its own use, without right or legal interest, various tools, pieces of equipment, construction materials, blueprints, documents, and other valuable items and papers necessary for completion of the Tripoli Resort Project. These converted and retained items are worth at least $100,000.

17. The conditions of political upheaval within Libya, described above, have rendered the judicial and administrative systems of that country inoperative. There exists no effective forum for the civil redress of these claims within Libya. Efforts to secure legal remedies in Libya would be futile.

### V.     CAUSES OF ACTION AND PRAYERS FOR RELIEF

**As for the First Cause of Action**
**(contract):**

18. A contract existed between Plaintiff Viewpoint Professionals LLC and Defendant National Investment Company, whereby Defendant agreed to pay Plaintiff for performance of general contracting and costs incurred for construction at the Tripoli Beach Project. By reason of these acts and failures to act on the part of Defendant National Investment Company, Defendant breached its contract with Plaintiff Viewpoint Professionals LLC. Defendant accepted Plaintiff's performance, but it did not remit the agreed payments to Viewpoint. Furthermore, NIC unjustly enriched itself to its own benefit and to Plaintiff's detriment, after Plaintiff performed agreed work in good faith, in expectation of the agreed payment. Plaintiff Viewpoint Professionals LLC's injuries due to Defendant National Investment Company's breach are reasonably valued at $8,893,540.00 for invoiced and unpaid civil works, plus $1,447,100.00 for the retained 10% of payments for works performed under the May 2009 Contract, plus $8,339,742.00 for outstanding liabilities to vendors and subcontractors, plus $1,796,708.00 for lost opportunity costs owed due to the interruption of the Tripoli Beach Project in 2011, for a total of $20,422,793.00 exclusive of interests and costs.

**As for the Second Cause of Action**
**(conversion):**

19. Plaintiff Viewpoint Professionals LLC had lawful possessory rights and interests in construction equipment and tools, blueprints and documents, and various other necessary items and papers. On or about May 2011, Defendant National Investment Company, without legal right, cause, permission, or license of Plaintiff, exercised, and it continues to exercise, dominion and control over said items of property, which it has not returned to Plaintiff when asked to do

6

so, in derogation of Plaintiff's rights over said items of property. Defendant continues to interfere with Plaintiff's rights over the property. Defendant National Investment Company is to Plaintiff Viewpoint Professionals LLC for injuries cause by its conversion of Plaintiff's property, in the sum of at least $100,000.

### As for a Third Cause of Action
### (account stated):

20. From 2010 to present, accounts were presented to the Defendant National Investment Company, detailing sums due to be paid to Plaintiff Viewpoint Professionals LLC, for works performed on the Tripoli Beach Project. The reasonable principal sum now due and owed to Viewpoint Professionals, as evidenced by these accounts, is at least $20,422,793.00. National Investment Company accepted the accounts as correct, and promised to pay Viewpoint Professionals the amount due. Viewpoint Professionals has never been paid by or on behalf of National Investment Company.

**WHEREFORE**, Plaintiff Viewpoint Professionals LLC prays for an award of money damages, against Defendant National Investment Company, for injuries suffered by Defendant's breach of contract; for benefits conferred to Defendant and detriments sustained by Plaintiff; for conversion of the Plaintiff's property; and for accounts stated and unpaid. Plaintiff also prays for the award of appropriate interest on damages, for the taxation of its costs of litigation against Defendant, and for the award other fees, charges, and other legal relief to which it may be lawfully entitled.

**A JURY TRIAL IS DEMANDED ON ALL CLAIMS.**

Respectfully submitted,

/s/ Daniel N. Arshack

Daniel N. Arshack
Arshack, Hajek & Lehrman PLLC
1790 Broadway, Suite 710
New York, N.Y. 10019
(212) 582-6500
dan@lawahl.com
*Attorney for Plaintiff*
*Viewpoint Professionals LLC*