UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

VIEWPOINT PROFESSIONALS LLC,

       Plaintiff,

 -v-                                                 No. 16 CV 1468-LTS

NATIONAL INVESTMENT COMPANY,

       Defendant.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

Plaintiff Viewpoint Professionals LLC ("Viewpoint") brought this suit seeking breach of contract and other tort damages against Defendant National Investment Company ("NIC"). (Docket entry no. 31, Amended Complaint ("AC").) NIC is an agency and instrumentality of the government of Libya. (AC ¶¶ 2, 4.)

Before the Court is NIC's motion, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and the doctrine of forum non conveniens, to dismiss the AC, arguing that this Court lacks jurisdiction of this dispute under the Foreign Sovereign Immunities Act ("FSIA"), that the Court lacks personal jurisdiction over NIC, and that the contract at issue is governed by a forum selection clause. The Court has considered the submissions of the parties carefully and, for the following reasons, the Court finds that it lacks subject matter jurisdiction and motion to dismiss is granted.

BACKGROUND

The following recitation of facts relevant to the disposition of the instant motion is drawn from the AC, which is taken as true for purposes of these motions, and from documents

integral to the AC, which the Court has determined are incorporated into the AC by reference because the AC explicitly references the documents in question and relies upon their terms. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

In May 2009, Viewpoint and NIC entered into an agreement (the "2009 Agreement") wherein Viewpoint agreed to serve as the general contractor for a construction project on the waterfront of Tripoli, Libya. (AC ¶ 9; see also docket entry no. 37, Declaration of Bashir Derwish ("Derwish Decl."), Ex. 3 (the 2009 Agreement).) Attachment 1 to the 2009 Agreement identifies specific contract values, denominated in U.S. dollars, that would be owing to Viewpoint upon performance of its obligations under the contract. (2009 Agreement, Attachment 1.) Those values included $14,789,000 for material supplies, $475,000 for engineering drawings, and a final guarantee payment of $318,000. (Id.) The 2009 Agreement authorized NIC to withhold 5% of the total value of materials until "[a]fter installation of these materials and equipment according to technical specifications," and another 5% of the total value of materials until "completion of primary receipt of all works of the contract." (Id. Art. 11.)

In July 2009, NIC issued a letter of credit (the "LOC") for the benefit of Viewpoint in connection with the 2009 Agreement. (AC ¶ 6; Derwish Decl. Ex. 6 (the LOC).) NIC's payments to Viewpoint under the 2009 Agreement were to be disbursed, pursuant to the LOC, by JPMorgan Chase Bank in New York, New York. (AC ¶ 6, LOC at 41A) The LOC was issued in the amount of $15,303,400. (LOC at 32B.) The LOC specifically referred to the payment amounts called for by the 2009 Agreement: $14,789,000 for "building materials and equipments [*sic*]" and $475,000 for "designs." (LOC at 45A.) Also as provided in the 2009 Agreement, the LOC contemplated payment of 90% of the value of materials on an ongoing basis, with 5% of the materials cost to be paid "after final erection against presentation of a

certificate issued and signed by the beneficiary [Viewpoint] and authenticated by the applicant [NIC]" and a final 5% of the materials cost to be paid "against presentation of provisional taking over certificate signed by the beneficiary [Viewpoint] and authenticated by the applicant [NIC]." (LOC at 47A(1)(B)-(D).)

Viewpoint alleges that NIC requested additional work be done on the project while it was underway, which Viewpoint agreed to perform. (AC ¶ 12.) Viewpoint alleges that there was an agreement to generate a second written contract to cover that additional work, but that agreement was never reduced to writing. (AC ¶ 13.)

Viewpoint seeks damages in the form of the final 10% of the value of materials withheld by NIC pursuant to the 2009 Agreement, which Viewpoint argues is due and owing, and a further $19,029,990 in contract or quantum meruit damages based on invoices issued relating to the additional specifications. Viewpoint also seeks damages for conversion of $100,000 of Viewpoint's property by NIC. (AC ¶¶ 21-26.)

DISCUSSION

The Court must first address whether it has subject matter jurisdiction of this case. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A case must be dismissed for lack of subject matter jurisdiction where "the district court lacks the statutory or constitutional power to adjudicate it." Id.

Pursuant to the FSIA, 28 U.S.C. § 1604, foreign states and their agencies and instrumentalities are presumptively immune from the jurisdiction of the courts of the United States, unless a statutory exception to immunity applies. "[I]f the claim does not fall within one

of the exceptions, federal courts lack subject matter jurisdiction" of the claim, as well as personal jurisdiction over the foreign state defendant.  Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 489 & n.14 (1983).  One of the exceptions to the FSIA provides that a foreign state is not immune from suit if the claims at issue are based upon "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C.S. § 1605(a)(2) (LexisNexis 2014).  This is one of three 'commercial activity' exceptions to sovereign immunity that are codified in Section 1605(a)(2).  The Second Circuit has held that "an action to enforce ... foreign judgments in U.S. courts must fail for lack of subject matter jurisdiction" where "the acts upon which the . . . judgments are themselves grounded do not meet the 'based upon' requirement of Section 1605(a)(2) of the FSIA." Transatlantic Shiffahrtskontor GMBH v. Shanghai Foreign Trade Corp., 204 F.3d 384, 391 (2d Cir. 2000).

In the instant case, it is uncontested that NIC is an agency or instrumentality of Libya, and therefore is generally immune from liability under FSIA unless a statutory exception applies.  Viewpoint relies solely on the Section 1605(a)(2) exception to the FSIA's general immunity from jurisdiction.  Specifically, Viewpoint argues that the payments it was due under the LOC were made from New York, and therefore NIC's failure to make those payments had a direct effect in the United States.  As a general matter, and as NIC concedes, Viewpoint is correct that the Section 1605(a)(2) requirement of a direct effect in the United States can be satisfied by a defendant's failure to honor a letter of credit lodged in a New York bank.  In Hanil Bank v. PT. Bank Negara Indonesia (Persero), the Second Circuit held that "failure to remit funds in New York, as contractually obligated, had a direct effect in the United States." 148 F.3d 127, 132 (2d Cir. 1998).

Viewpoint's claims in this action, however, cannot be tied to a failure to pay under the LOC. By its terms, the LOC expired on June 17, 2010. Accordingly, after June 17, 2010, none of Viewpoint's damages can be traced to a failure to pay on a letter of credit lodged in a New York bank, because no such letter existed. The allegations in the AC, read in the light most favorable to Viewpoint, indicate that Viewpoint left the worksite in Tripoli in the spring of 2011—after the LOC expired. There are no allegations in the AC that the two certificates of completion contemplated by the 2009 Agreement and required by the LOC before the final 10% of material costs could be remitted to Viewpoint were ever signed, nor even that Viewpoint had actually completed all of the work required under the 2009 Agreement prior to the expiration of the LOC. Simply put, the AC and the supplemental material submitted by Plaintiff in connection with this motion practice are entirely devoid of factual allegations from which the Court could conclude that Viewpoint's entitlement to the final 10% of material costs arose before the LOC expired in June 2010. Accordingly, Viewpoint has not shown that NIC's failure to pay the final 10% of material costs—representing $1,804,500 in damages claimed in Viewpoint's breach of contract and quantum meruit claims—caused a direct effect in the United States and, accordingly, NIC is protected by the FSIA's general immunity from the jurisdiction of this Court.

Similarly, with respect to the remaining amounts claimed by Viewpoint, the lack of a related letter of credit lodged with a bank in the United States means that Viewpoint cannot show a direct effect in the United States resulting from NIC's alleged failure to pay. Viewpoint concedes, in its opposition brief to the instant motion, that "no letter of credit was ever created for this additional money, but NIC promised a letter of credit for it." (Docket entry no. 49, Pl.'s Mem. of Law in Opp., at 16.) Viewpoint has submitted no facts indicating that this promise,

and NIC's alleged failure to honor it, resulted in direct effects in the United States. Accordingly, NIC is protected by the FISA's general immunity from the jurisdiction of this Court as to Viewpoint's claim for the remaining $19,029,990.

Viewpoint has also failed to allege or establish any direct effect in the United States on its claim for $100,000 in converted property and, for substantially the same reasons, NIC is protected by immunity as to that claim as well.

## CONCLUSION

For the foregoing reasons, Viewpoint has failed to establish that an exception to the FSIA applies to the conduct alleged in the AC and, accordingly, NIC's motion to dismiss the AC pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction is granted. The Court need not consider the remaining aspects of NIC's motion to dismiss.

This Memorandum Opinion and Order resolves docket entry no. 34. The Clerk of Court is respectfully requested to enter judgment for Defendants and close this case.

SO ORDERED.

Dated: New York, New York
September 14, 2017

       /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge